UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ECHOSTAR TECHNOLOGIES
CORPORATION,

                      Plaintiff,          **REPORT AND RECOMMENDATION**

     - v -

                                           CV 04-244 (CPS)(VVP)

WILLIAM MELITTAS,

                      Defendant.
------------------------------------------------------------x

POHORELSKY, U.S. Magistrate Judge:

      This matter was referred to me by Judge Sifton for a report and recommendation regarding the amount of damages to be awarded to the plaintiff as against the defaulting defendant William Melittas. This case involves the defendant's purchase and use of decoding devices designed to permit the interception and viewing of plaintiff's programming without authorization or payment. The plaintiff seeks statutory damages as provided under 47 U.S.C. § 605(e)(3). The court received affidavits in lieu of holding an evidentiary hearing on the damages issues referred to this magistrate judge. *See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 11 (2d Cir. 1997) ("We have held that, under rule 55(b)(2), 'it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment."); *accord, Fustok v. ContiCommodity Serv., Inc.,* 873 F.2d 38, 40 (2d. Cir.1989); *Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 54 (2d Cir.1993). As no party has objected to that procedure, the court has considered affidavits submitted by the plaintiff, and concludes that they provide a basis for the damages recommended

below. Although given notice, the defendant has not submitted any opposition to the plaintiff's submissions.

   *1.    Liability*

By virtue of the defendant's default, the well-pleaded allegations of the Complaint are deemed admitted, except as to the amount of the plaintiff's damages. *See, e.g.*, *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 113 S. Ct. 1049 (1993); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Thus, the allegations of the complaint establish that the plaintiff delivers hundreds of channels of digital entertainment, and informational programming to customers equipped with specialized digital satellite system equipment. *See* Complaint ¶ 1. Echostar encrypts its satellite transmissions and employs technology designed to limit programming only to those lawful subscribers who pay for its services and are provided with "access cards." *Id.* The court is required to accept as true the assertions that the defendant purchased or acquired three (3) "pirate" decoding devices designed to circumvent encryption access controls and to permit unauthorized receipt of plaintiff's television programming. *Id.* ¶¶ 2,18-22. In addition, the defendant used one such pirate device to intercept and receive plaintiff's programming services, without the plaintiff's authorization and without payment. Id ¶ 25. The court is also required to accept as true that the programming services intercepted by the defendant were transmitted by satellite signals. *Id.* ¶ 44. Such signals fall within the coverage of the applicable statute, and the defendant's conduct therefore gives rise to liability. *See Int'l Cablevision, Inc. v. Sykes*, 997 F.2d 998, 1008 (2d Cir. 1993) (quoting 130 Cong. Rec. 31,874, *reprinted in* 1984 U.S.C.C.A.N. 4746).

## 2. *Damages*

The plaintiff has elected to seek an award of statutory damages in the amount of $110,000 against the defendant under 47 U.S.C. § 605(e)(3)(C)(i)(II), which requires the court to award statutory damages in an amount of not less than $1,000 and not more than $10,000 for the defendant's unauthorized receipt of plaintiff's programming services, and damages in an amount of not less than $10,000 and not more than $100,000 for the defendant's distribution of the devices. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II). Damages under each section are awarded "as the court considers just." *Id.* Plaintiff also seeks full costs under 47 U.S.C. § 605(e)(3)(B)(iii), which mandates that the court "shall direct the recovery of full costs, including rewarding reasonable attorneys' fees."

The evidence offered in plaintiff's affidavits establish the following facts. Plaintiff's customers can obtain programming subscriptions ranging from basic to premium service. "Premium" programming permits the subscriber to receive movies channels such as HBO, Showtime, Cinemax, Starz, Encore and other similar programming for a higher monthly rate. *See* Plaintiff's Affidavit Support of Motion for Default (hereinafter "McGinnis Aff.") ¶ 8. In January 2000, the defendant subscribed to receive plaintiff's programming. *See* Motion and Affirmation in Support of Default (hereinafter "Lonstein Affirmation") ¶ 12, Ex. E. The defendant's account was closed by the plaintiff for non-payment on September 6, 2002. *Id.* Since the defendant purchased three unauthorized devices, *see* Complaint ¶¶ 19-21, Lonstein Affirmation ¶ 12, Ex. E, the court concludes that statutory damages may be computed on the basis that the defendant used one device personally from and after September 6, 2002, and sold (or otherwise provided) the

remaining devices to others. *Cf. Time Warner Cable of New York City v. Browne,* 2000 WL 567015 (S.D.N.Y. May 10, 2000).

The court first addresses the one device purchased by the defendant for personal use. In setting the amount of statutory damages within the ranges provided by the statute, the court considers as a starting point the value of the programming services to which the defendant had access without paying the applicable fees. The plaintiff, however, has provided scant information about these matters. While receiving plaintiff's programming legitimately, the defendant was paying the plaintiff approximately $107 per month for his subscription. *See* Lonstein Aff. ¶ 12, Ex. E. However, the plaintiff has not attempted to establish the minimum, or maximum, value of services to which the defendant would have had access through the use of the illegal device during the period when it could have been used. Nor has the plaintiff set forth the subscription rates they charge legitimate customers, or any losses they incurred due to the defendant's interception of the signals. In addition, there is no indication that the defendant profited in any manner from his actions beyond receiving the plaintiff's programming free of charge.

It is a plausible assumption, however, that the value of the programming services to which the plaintiff had access by means of the unlawful device after September 2002 when the defendant's subscription was cancelled by the plaintiff was at least $107 per month. At this rate, the value of the services the defendant has illegally received for the past 36 months totals approximately $3,852. Given the paucity of information provided by the plaintiff concerning any basis upon which to rest a damage award, an award of $10,000 would be excessive. An additional penalty over and above the value of services stolen, however, is certainly reasonable

in the interest of deterrence. The court therefore recommends that the above total be doubled, yielding an award of $7,704 in statutory damages to be imposed for the illegal use of one device.

As a result of the default, the plaintiff has been unable to conduct discovery in order to substantiate precisely how the other two devices purchased by the defendant were used and how much of a loss was sustained due to the illegal use of the devices. It is a reasonable inference that the two devices were resold or otherwise distributed to others by the defendant. It is also plausible for the court to assume that such devices allowed other unauthorized users to obtain plaintiff's services. Given the above considerations regarding the value of services to which the defendant had access, the court infers that each device would allow other unauthorized users to intercept programming worth approximately $3,800. Thus, in light of the foregoing considerations, and to accomplish the compensatory and deterrence purposes of the statute, the court recommends that the plaintiff be awarded the $7,600 in statutory damages for each of the other two devices obtained by the defendant.

### 3. *Attorney's Fees and Costs*

The plaintiff does not seek attorney's fees in this matter, but has submitted an affidavit to establish the costs it had incurred. The plaintiff's affidavit establishes that the plaintiff incurred $150 in filing fees and $125 in service of process fees, which are properly reimbursable.

In accordance with the above considerations, the undersigned hereby **RECOMMENDS** that statutory damages in the amount of $22,904, and costs in the amount of $275, be awarded in favor of the plaintiff and against the defendant William Melittas.

\*      \*      \*      \*      \*      \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 474, 88 L.Ed.2d 435 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**Counsel for the plaintiff shall serve a copy of this Report and Recommendation on the defendant by regular mail and file proof of such service in the record.**

                                                   *Viktor V. Pohorelsky*
                                              VIKTOR V. POHORELSKY
                                              United States Magistrate Judge

Dated: Brooklyn, New York
        September 15, 2005